United States Court of Appeals for the Federal Circuit

 03-1426,-1489

 VASTFAME CAMERA, LTD.,

 Appellant,

 and

 ARGUS INDUSTRIES, INC.,

 Appellant,

 v.

 INTERNATIONAL TRADE COMMISSION,

 Appellee,

 and

 FUJI PHOTO FILM CO., LTD.,

 Intervenor.

 Joseph W. Bain, Akerman Senterfitt, of West Palm Beach, Florida,
argued for VastFame Camera, Ltd.

 Jean H. Jackson, Attorney, Office of the General Counsel, U.S.
International Trade Commission, of Washington, DC, argued for
appellee. With her on the brief were Lyn M. Schlitt, General Counsel,
and James M. Lyons, Deputy General Counsel.

 Lawrence Rosenthal, Stroock & Stroock & Lavan LLP, of New York,
New York, argued for intervenor. With him on the brief were Matthew
W. Siegal, Lisa A. Jakob, Angie M. Hankins and Howard D. Shatz. Of
counsel were Will E. Leonard and Michael L. Doane, Adduci, Mastriani &
Schaumberg, L.L.P., of Washington, DC.

Appealed from: United States International Trade Commission

 United States Court of Appeals for the Federal Circuit

 03-1426, -1489

 VASTFAME CAMERA, LTD.,
 Appellant,
 and
 ARGUS INDUSTRIES, INC.,
 Appellant,
 v.
 INTERNATIONAL TRADE COMMISSION,
 Appellee,
 and
 FUJI PHOTO FILM CO., LTD.,
 Intervenor.
 _____________________________

 DECIDED: October 7, 2004

 _____________________________

Before CLEVENGER, BRYSON, and LINN, Circuit Judges.

LINN, Circuit Judge.

 This appeal is one of two related appeals from a decision of the
International Trade Commission (“Commission”) involving “single-use”
or “disposable” 35 mm film cameras, more formally known as “lens-
fitted film packages” (“LFFP”). VastFame Camera, Ltd. (“VastFame”)
appeals from the Commission’s determination that importation of
VastFame’s LFFPs violates a pre-existing general exclusion order. In
re Certain Lens-Fitted Film Packages, Inv. No. 337-TA-406 (Int’l Trade
Comm’n May 2, 2002) (“Initial Determination”). Because the
Commission’s decision refusing to allow VastFame to present its
invalidity defense was contrary to 19 U.S.C. § 1337(c), we vacate the
Commission’s infringement determination with respect to VastFame and
remand for further proceedings consistent with this opinion.
 BACKGROUND
 This proceeding arises out of the Commission’s investigation,
entitled In re Certain Lens-Fitted Film Packages, which resulted in
the issuance of a general exclusion order on June 9, 1999. Inv. No.
337-TA-406 (Int’l Trade Comm’n June 9, 1999) (“Initial
Investigation”). The Initial Investigation involved newly made and
refurbished LFFPs. The Initial Investigation also involved numerous
Fuji Photo Film Co., Ltd. (“Fuji”) patents, including U.S. Patent No.
4,884,087 (“the ’087 patent”). At least one party in the Initial
Investigation raised an invalidity defense with respect to the ’087
patent, but the defense was abandoned before any judgment on the
merits.
 VastFame was not a party to the Initial Investigation, and its
VN99 and VN991 cameras were not at issue in that investigation.
Although VastFame was not a named respondent in the Initial
Investigation, it knew that the proceedings were taking place.
VastFame was notified of the proceedings in a March 25, 1998 letter
from Fuji. The letter informed VastFame that it had been identified
as a potential respondent, offered to supply VastFame with a copy of
the supplemented complaint, and advised VastFame that whether or not
it joined, it would be bound by the decision. VastFame refused to
join the proceedings.
 After the general exclusion order issued, VastFame obtained a
ruling from the U.S. Customs Service[1] (“Customs”) that the VN99 and
VN991 cameras did not violate the general exclusion order. Lens-
Fitted Film Packages, Pub. No. 468780, ITC Inv. No. 337-TA-406
(Customs Serv. Mar. 27, 2000). Customs only considered one of the
fifteen patents upon which the general exclusion order was based.
Nevertheless, having concluded that VastFame’s LFFPs did not violate
the general exclusion order, Customs allowed the importation of
VastFame’s VN99 and VN991 cameras beginning in early 2000.
 In June 2001, Fuji filed a complaint with the Commission
requesting enforcement and advisory proceedings to determine whether
VastFame and others had violated the general exclusion order. In
those proceedings, VastFame pled as a defense that claim 15 of the
’087 patent was invalid under 35 U.S.C. §§ 102 and 103(a) in view of
certain prior art references. Vastfame fully briefed the invalidity
defense and was prepared to put on its case at the trial, but the
Administrative Law Judge (“ALJ”) refused to consider invalidity,
ruling that the defense could not be raised in the enforcement
proceeding. Initial Determination, slip op. at 64 n.33. The ALJ
explained his position at a pretrial conference. At that conference,
he advised the parties that the Commission’s order directing the ALJ
to conduct the proceedings did not permit him to entertain a validity
challenge to the patents underlying the general exclusion order. The
ALJ expressed the view that the Commission’s order limited him to
determining only whether the importation of the enforcement
respondents’ cameras violated the general exclusion order.
 In February 2002, the ALJ conducted an evidentiary hearing on the
issues raised in Fuji’s complaint. On May 2, 2002, the ALJ concluded
that the VN99 and VN991 cameras infringed only one claim asserted by
Fuji, namely, claim 15 of the ’087 patent. Initial Determination.
Based on the finding of infringement, the ALJ held that the VN99 and
VN991 cameras were in violation of the general exclusion order and
could no longer be imported. Because Fuji’s complaint sought both
enforcement and advisory proceedings, the ALJ simultaneously issued
separate opinions in the form of an initial determination on
enforcement and an advisory opinion regarding violation of the general
exclusion order. See In re Certain Lens-Fitted Film Packages, Inv.
No. 337-TA-406 (Int’l Trade Comm’n May 2, 2002) (advisory opinion).
 Upon entry of the ALJ’s enforcement initial determination,
VastFame petitioned the Commission to remand the case to the ALJ for
consideration of the previously excluded invalidity defense. The
Commission declined to review the ALJ’s decision on this issue leaving
the decision as the final determination of the Commission. In re
Certain Lens-Fitted Film Packages, Inv. No. 337-TA-406 (Int’l Trade
Comm’n Aug. 7, 2002). On May 15, 2003, the Commission finalized its
proceedings. In re Certain Lens-Fitted Film Packages, Inv. No. 337-TA-
406 (Int’l Trade Comm’n May 15, 2003).
 VastFame timely appealed to this court. We have jurisdiction
under 28 U.S.C. § 1295(a)(6).
 DISCUSSION
 A.  Standard of Review
 As the agency charged with the administration of § 1337, the
Commission is entitled to appropriate deference to its interpretation
of the statute. See United States v. Mead Corp., 533 U.S. 218, 227
(2001); Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467
U.S. 837, 844 (1984); Enercon GmbH v. Int’l Trade Comm’n, 151 F.3d
1376, 1381 (Fed. Cir. 1998). Under Chevron, we must first look to
“whether Congress has directly spoken to the precise question at
issue.” 467 U.S. at 842. As the Supreme Court explained, “If a
court, employing traditional tools of statutory construction,
ascertains that Congress had an intention on the precise question at
issue, that intention is the law and must be given effect.” Id. at
843 n.9. However, “if the statute is silent or ambiguous with respect
to the specific issue, the question for the court is whether the
agency’s answer is based on a permissible construction of the
statute.” Id. at 843. In the latter case, this court will “uphold
the [Commission’s] interpretation of [19 U.S.C. § 1337] if it is
reasonable in light of the language, policies and legislative history
of the statute.” Enercon, 151 F.3d at 1381; see also San Huan New
Materials High Tech, Inc. v. Int’l Trade Comm’n, 161 F.3d 1347, 1351
(Fed. Cir. 1998) (quoting Enercon, 151 F.3d at 1381).
 B.  Statutory Basis of the Enforcement Proceeding
 As a threshold matter, the parties disagree as to the statutory
basis of the enforcement proceeding before the Commission. This is an
issue we must decide before we can determine if the Commission erred
in not providing VastFame an opportunity to present its invalidity
defense. VastFame argues that the enforcement proceeding, which was
expressly conducted under 19 C.F.R. § 210.75(b), constituted an
investigation under § 1337(b) because that is the only provision that
authorizes the type of inquiry engaged in by the Commission in this
case. The Commission argues that § 1337 provides the Commission with
general authority to enforce its own exclusion orders. It argues that
multiple provisions in § 1337 indicate that Congress intended for the
Commission to have a role in enforcing its own orders.
 Neither party cites express statutory authority for enforcement
proceedings, and we have found none. Because the statute is silent
with respect to the Commission’s authority specifically to conduct
enforcement proceedings, the Commission’s interpretation of § 1337 may
be entitled to deference “if it is reasonable in light of the
language, policies and legislative history of the statute.” Enercon,
151 F.3d at 1381.
 The Commission is a creature of statute. Sealed Air Corp. v.
U.S. Int’l Trade Comm’n, 645 F.2d 976, 987 (CCPA 1981). Thus, it must
find authority for its actions in its enabling statute. See Young
Eng’rs, Inc. v. U.S. Int’l Trade Comm’n, 721 F.2d 1305, 1311-12 (Fed.
Cir. 1983) (“5 C.F.R. § 211.57 cannot, and does not, provide greater
authority than the statute.”). The Commission cites 19 U.S.C. § 1335,
which gives the Commission authority to “adopt such reasonable
procedures and rules and regulations as it deems necessary to carry
out its functions and duties.” However, this provision does nothing
more than provide the Commission with authority to promulgate rules.
It does not give the Commission the substantive right to go beyond the
express powers provided in § 1337. Similarly, the Commission cites
Rule 210.75(b), under which the enforcement proceeding was conducted.
However, the Rule itself cannot provide the needed statutory
authority. See Young Eng’rs, 721 F.2d at 1312. The Commission also
cites § 1337(f); however, that section concerns only cease and desist
orders and cannot provide the authority for Rule 210.75(b), at least
to the extent that the rule relates to the enforcement of a general
exclusion order. As VastFame points out, a cease and desist order was
not issued against it in this case.
 The Commission also cites § 1337(k)(1), which provides that
exclusion orders shall remain in effect until the Commission
determines otherwise; and § 1337(k)(2), which provides that a party
previously found in violation of § 1337 may petition for a change of
an exclusion order. Section 1337(k)(1) says nothing about the
Commission’s authority to conduct enforcement proceedings. Moreover,
it was Fuji, not the Commission, that initiated the present
proceedings when it filed its complaint. Section 1337(k)(2) is
inapplicable because VastFame had not “previously been found by the
Commission to be in violation of” § 1337. 19 U.S.C. § 1337(k)(2)
(2000). And that would be true even if VastFame had requested the
proceedings. Finally, the Commission cites § 1337(i), which provides
that the Commission may order the seizure of goods previously adjudged
to be in violation of § 1337 and previously denied entry. But the
Commission does not argue that any of these statutory provisions,
including § 1337(i), expressly authorizes the enforcement proceeding
conducted in this case. The Commission uses § 1337(i) to buttress its
argument made with respect to each of these statutory provisions that
the authority to promulgate Rule 210.75(b) emanates from the penumbra
of § 1337. We cannot agree with the Commission that, if no specific
statutory authority exists, the Commission has the inherent authority
to conduct enforcement proceedings. Such a view is not reasonable in
light of the express powers provided in § 1337 and the fact that the
Commission is a creature of statute. Sealed Air Corp., 645 F.2d at
987. Because the Commission’s proffered interpretation of the statute
is unreasonable, we reject it.
 While no statutory provision of § 1337 expressly refers to
enforcement proceedings, § 1337(b) gives the Commission general
authority to investigate violations of the statute. Section
1337(b)(1) provides, “The Commission shall investigate any alleged
violation of this section on complaint under oath or upon its
initiative.” Section 1337(b), by its language, is not limited to
initial complaints and authorizes the Commission to conduct
proceedings, including proceedings for the enforcement of general
exclusion orders, to “investigate any alleged violation of this
section on complaint under oath.” In this case, the Commission began
its investigation as a result of Fuji’s complaint. Initial
Determination, slip op. at 1. The statute further provides that “the
Commission shall publish notice thereof in the Federal Register.” 19
U.S.C. § 1337(b)(1) (2000). Consistent with this requirement, the
Commission, in this case, published notice of its investigation in the
Federal Register. In re Certain Lens-Fitted Film Packages, 66 Fed.
Reg. 40,721 (Int’l Trade Comm’n Aug. 3, 2001) (notice of
investigation).
 Although the Commission seeks to avoid basing its enforcement
proceeding on § 1337(b), we hold that the Commission has authority to
conduct proceedings to enforce general exclusion orders, and that its
authority to conduct such proceedings arises under and is subject to
the provisions of § 1337(b).
 C.  “All Cases”
 Having determined that the Commission’s authority to conduct an
enforcement proceeding is found generally in § 1337(b), we next
consider whether the Commission violated § 1337 in not allowing
VastFame to present its invalidity defense. The language of
§ 1337(b)(1) states: “The Commission shall investigate any alleged
violation of this section on complaint under oath or upon its
initiative.” 19 U.S.C. § 1337(b)(1) (2000) (emphasis added).
Investigations are governed by § 1337(c), which states:
 The Commission shall determine, with respect to each
 investigation conducted by it under this section, whether or not
 there is a violation of this section . . . .  Each determination
 under subsection (d) or (e) of this section shall be made on the
 record after notice and opportunity for a hearing in conformity
 with the provisions of subchapter II of chapter 5 of title 5.
 All legal and equitable defenses may be presented in all cases.

Id. § 1337(c) (emphases added).
 On its face, the statute appears to require the Commission to
allow the presentation of all defenses in its investigations. The
Commission contends, however, that the nature of a general exclusion
order and the considerable burden in establishing the need for such an
order support the Commission’s view that general exclusion orders may
not be collaterally attacked. The Commission argues that § 1337(d)(2)
is a codification of the Commission’s balancing of the burden on
domestic patentees of repeated litigation and the effects on
legitimate foreign trade of erroneous determinations as laid down in
Certain Airless Paint Spray Pumps and Components Thereof, USITC Pub.
No. 1199, Inv. No. 337-TA-90 (Nov. 1981). Section 1337(d)(2),
however, only addresses the criteria for issuance of general exclusion
orders. It does not address whether general exclusion orders may be
subject to collateral attack. Section 1337(d)(2), then, provides no
support for the Commission’s position. Moreover, Congress’s intent in
adding § 1337(d)(2) was to comply with its obligations under the
General Agreement on Tariffs and Trade, not to adopt the Commission’s
policy objectives as announced in Certain Airless Paint Spray Pumps.
See S. Rep. No. 103-412, at 120 (1994); H.R. Rep. No. 103-826, at 140-
42 (1994) (“The amendments are necessary to ensure that U.S.
procedures for dealing with alleged infringements by imported products
comport with GATT 1994 ‘national treatment’ rules, while providing for
the effective enforcement of intellectual property rights at the
border.”).
 The Commission argues that general exclusion orders are like
district court injunctions in that they must be obeyed until they are
modified, reversed, or vacated. Thus, in the Commission’s view, a
general exclusion order, like a district court injunction, should not
be subject to collateral attack. However, a general exclusion order
is not like a district court injunction with respect to the parties
affected. A general exclusion order broadly prohibits entry of
articles that infringe the relevant claims of a listed patent without
regard to whether the persons importing such articles were parties to,
or were related to parties to, the investigation that led to issuance
of the general exclusion order. See 19 U.S.C. § 1337(d)(2) (2000)
(“The authority of the Commission to order an exclusion from entry of
articles shall be limited to persons determined by the Commission to
be violating this section unless the Commission determines
that . . . .”); Hyundai Elecs. Indus. Co. v. U.S. Int’l Trade Comm’n,
899 F.2d 1204, 1210 (Fed. Cir. 1990) (stating that “in an appropriate
case the Commission can impose a general exclusion order that binds
parties and nonparties alike and effectively shifts to would-be
importers of potentially infringing articles, as a condition of entry,
the burden of establishing noninfringement”). By contrast, district
court injunctions are generally limited to the parties entering
appearances before the court or those aiding and abetting or acting in
concert or participation with a party before the court. Additive
Controls & Measurement Sys., Inc. v. Flowdata, Inc., 96 F.3d 1390,
1394 (Fed. Cir. 1996) (“Courts do not write legislation for members of
the public at large; they frame decrees and judgments binding on the
parties before them.”). Because of the differing nature of general
exclusion orders and district court injunctions, the justification for
the prohibition against collateral challenges to injunctions is not
directly applicable to general exclusion orders. Thus, the
Commission’s analogy to district court injunctions is inapposite and
unhelpful.
 Additionally, the Commission cites Multi-Level Touch Control
Lighting Switches, Inv. No. 337-TA-225 (Int’l Trade Comm’n July 16,
1987), as evidence of its long standing policy of not hearing
challenges to the validity of a patent underlying a general exclusion
order in enforcement or advisory proceedings. It sets forth three
public policy arguments to support this position: (1) the difficulty
in administering the statute if general exclusion orders are subject
to repeated challenges; (2) the necessity of preserving the original
complainant’s remedy once it has been issued; and (3) the public
interest in avoiding uncertainty in the market place. One can argue
that all of these policies would be similarly served by preventing
subsequent accused infringers in district courts from challenging the
validity of a patent that had been previously adjudicated to be not
invalid. However, that is not the law. These policies do not justify
the Commission’s interpretation in the absence of a showing that the
statute may be fairly read the way the Commission interprets it. To
the contrary, the intent of Congress with respect to this issue is
quite clear.
 Nevertheless, the Commission argues that the “all cases” language
of § 1337(c) only applies to original investigations, not advisory and
enforcement proceedings. The Commission argues that the following
language of § 1337(c) indicates that the statute only provides for
presentation of all defenses in proceedings that lead to
determinations under § 1337(d) or (e):
 The Commission shall determine, with respect to each
 investigation conducted by it under this section, whether or not
 there is a violation of this section . . . .  Each determination
 under subsection (d) or (e) of this section shall be made on the
 record after notice and opportunity for a hearing in conformity
 with the provisions of subchapter II of chapter 5 of title 5.
 All legal and equitable defenses may be presented in all cases.

19 U.S.C. § 1337(c) (2000). Because subsections (d) and (e) both
relate to the issuance of exclusion orders, the Commission’s
interpretation would require the Commission to first determine whether
a complainant was likely to prevail before deciding whether all
defenses may be presented. Moreover, the second sentence quoted above
specifically refers to determinations “under subsection (d) or (e),”
whereas the “all defenses” rule applies to “all cases.” If Congress
had intended the “all defenses” provision to only apply to proceedings
that lead to determinations under subsections (d) and (e), or even to
original proceedings, it could have easily said so. The Commission’s
proffered interpretation contravenes the clear language of the
statute.
 VastFame is correct that the “all defenses” provision at least
applies to investigations under § 1337(b). The opening sentence of
§ 1337(c) plainly indicates that investigations under § 1337(b) are
governed by § 1337(c). No other language in § 1337(c) modifies the
broad reference to “all cases.” Thus, we hold that the phrase “all
cases” clearly encompasses investigations under § 1337(b). The
necessary result, then, is that participants in a proceeding under
§ 1337(b) must be permitted to raise all defenses.[2]
 The Commission argues that an interpretation of § 1337(c) that
makes every Commission proceeding subject to the “all defenses” rule
is inconsistent with § 1337(i). Section 1337(i) provides authority
for the Commission to issue an order requiring articles imported in
violation of § 1337 to be seized and forfeited to the United States if
the article was previously the subject of an attempted importation
that was denied by reason of an order issued under subsection (d) and
upon such denial the party seeking to import was informed of the
exclusion order and that any further attempts to import such articles
would result in seizure and forfeiture. The Commission’s argument
misses the mark, however, because VastFame has not asked us to hold
that the “all defenses” provision applies to all proceedings in the
Commission. VastFame argues that the “all defenses” provision applies
to § 1337(b) at a minimum. Thus, whether the “all defenses” provision
applies to § 1337(i) is not before us. We hold only that the phrase
“all cases” encompasses investigations under § 1337(b). We need not
and do not decide what other proceedings may fall within the scope of
“all cases.”
 D.  Due Process
 Because we hold that the Commission erred by not allowing
VastFame to present its invalidity defense based on the clear language
of § 1337(c), we do not reach the issue of whether VastFame’s due
process rights were violated in this case.
 E.  VastFame’s Invalidity Defense
 As an alternative argument, VastFame asks this court not merely
to vacate but to reverse the Commission’s final determination if we
find, without further need of evidence, that claim 15 of the ’087
patent is invalid. The Commission declined to entertain VastFame’s
invalidity defense; it has not ruled on the merits of this defense.
In Beloit Corp. v. Valmet Oy, 742 F.2d 1421, 1423 (Fed. Cir. 1984),
this court held that it “does not sit to review what the Commission
has not decided.” Accordingly, the court will not consider the merits
of the validity defense that was neither heard nor decided by the
Commission. Instead, having determined that the Commission erred in
excluding the validity challenge, we remand the case to the Commission
for consideration of VastFame’s invalidity defense in the first
instance.
 CONCLUSION
 Because the Commission’s decision precluding VastFame from
raising its invalidity defense was not reasonable or supported by the
language, policies, and legislative history of § 1337, we vacate the
Commission’s enforcement decision and remand for further proceedings
consistent with this opinion.
 VACATED AND REMANDED
 COSTS
 No costs.

-----------------------
 [1] As of March 1, 2003, the U.S. Customs Service became the
Bureau of Customs and Border Protection in the Department of Homeland
Security. The Department of the Treasury still retains authority over
Customs’ revenue functions including enforcement of 19 U.S.C. § 1337.
Homeland Security Act of 2002, P.L. 107-296, §§ 412, 415, 116 Stat.
2135, 2179-81.
 [2] Our interpretation of the statutory language should not be
read to preclude application of traditional principles of res judicata
or collateral estoppel. See, e.g., San Huan New Materials High Tech,
Inc. v. Int’l Trade Comm’n, 161 F.3d 1347, 1357-58 (Fed. Cir. 1998)
(“There is no denial of due process in applying to San Huan the claim
construction that it declined to challenge by offering consent and
seeking termination of the investigation.”); Aktiebolaget Karlstads
Mekaniska Werkstad v. U.S. Int’l Trade Comm’n, 705 F.2d 1565, 1578
(Fed. Cir. 1983) (“Section 337(c) was not violated; KMW had adequate
opportunity to present its legal and equitable defenses, albeit during
the first investigation.”). However, this is not a case where any
form of preclusion is appropriate. Vastfame was not a party to the
Initial Investigation before the Commission and, thus, did not have a
prior opportunity to raise the invalidity issue it now seeks to
present.